The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar (and the briefs and oral arguments before the Full Commission). The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act and the employment relationship existed between the parties at the relevant time.
2. Cigna Insurance Company was the carrier on the risk.
3. Plaintiff sustained an admittedly compensable injury on July 21, 1992, as a result of which the parties entered into a Form 21 Agreement for Compensation.
4. Plaintiff's average weekly wage was $320.00, which yields a compensation rate of $213.34.
5. Plaintiff received temporary total disability compensation from May 13, 1994 to the date of the hearing and continuing.
6. Plaintiff received temporary total disability benefits from July 21, 1992 until September 27, 1992; and on September 28, 1992, plaintiff returned to work.
7. The issues for determination are:
 a. What amount of temporary partial disability compensation is plaintiff entitled to recover for the time period from September 28, 1992 to May 12, 1994; and
 b. Whether plaintiff is entitled to any temporary total disability compensation during the same period.
8. The parties stipulated 31 pages of medical records into evidence.
* * * * * * * * * * *
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a 37 year old divorced male high school graduate whose work experience had been as a meat cutter. Plaintiff was 66 inches tall and weighed approximately 187 pounds.
2. Plaintiff's duties required him to stand, reach, stoop, bend, carry, lift, push and pull meat, boxes of meat, and packages of meat of various sizes and weights, some up to 40 pounds. Plaintiff also was responsible for cutting, trimming, grinding, and packaging meat for sale to the public.
3. Plaintiff slipped in the meat department on July 20, 1992 while carrying a 40 pound box of meat.
4. Following the incident, plaintiff was seen at the Med Center I of Eastern Carolina on August 21, 1992, and was referred to Dr. Jeffrey Moore, an orthopedist, on August 31, 1992. Plaintiff had low back pain and burning down the right leg. An MRI was reported as negative on September 2, 1992. Dr. Moore recommended conservative treatment for the back strain, including physical therapy.
5. Dr. Moore saw plaintiff on September 23, 1992, at which time he authorized plaintiff to return to work on September 28, 1992.
6. Plaintiff returned to his regular job on September 28, 1992; and continued to work until April 21, 1993. Plaintiff's employment was terminated at that time as a result of his failure to report to work for two weeks or to contact the employer regarding his inability to report to work due to his having lost his driver's license following a conviction for driving while impaired.
7. Plaintiff was seen for a recheck by Dr. Moore on February 5, 1993, at which time he complained of recurrent back pain. Dr. Moore noted that plaintiff had failed to continue the exercise program, and he discussed the importance of continuing exercises.
8. Plaintiff obtained employment as a meat cutter on May 24, 1993 with Byrd's Food Store. Plaintiff left this job on May 28, 1993, due to back pain. However, the plaintiff sought no medical treatment at this time, and was not authorized by his treating doctor to be out of work.
9. Plaintiff next worked for Food Dock beginning June 22, 1993 as a meat cutter. Reasonable accommodations were made for plaintiff so that his job duties were limited to grinding, cutting, and packaging meat. In July of 1993, plaintiff was promoted to meat market manager at wages of $202.17 per week. This job required plaintiff to lift, carry, push, and pull heavy boxes of meat.
10. Plaintiff began to experience increased back pain with radiation into the right groin and hip. He returned to Dr. Moore on October 28, 1993. On October 28, 1993, plaintiff quit his job at Food Dock due to his severe back pain.
11. Plaintiff continued to attempt to return to work, working at the Red and White Food Store on November 22, 1993, January 17, 1994, and February 7, 1994, at which times he earned, respectively, $31.50, $56.00, and $57.05.
12. Dr. Moore referred plaintiff to Dr. Paul Suh at the North Carolina Spinal Center. The compensable injury by accident on July 20, 1992 caused or exacerbated plaintiff's degenerative disc disease at L3-4 and L5-S1. On May 13, 1994, Dr. Suh performed a skip fusion with replacement of screws and rods and a bone graph. Pursuant to a Form 26 agreement approved by the Commission on September 21, 1994, defendant-employer reinstated temporary total disability compensation to plaintiff as of May 13, 1994.
13. There is insufficient evidence of record from which to prove by its greater weight that plaintiff was disabled from the termination by defendant-employer on April 21, 1993, until his increased back pain caused him to leave his job on October 28, 1993. During this period of time, plaintiff retained the capacity to earn the wages he received at the time of the injury by accident.
14. As a result of the compensable injury by accident on July 20, 1992, plaintiff was unable to return to his regular employment or any other employment, other than the three days he attempted to work at Red and White, since October 28, 1993 and continuing thereafter.
* * * * * * * * * * *
Based upon the findings of fact, The Full Commission concludes as follows
CONCLUSIONS OF LAW
1. As a result of the admittedly compensable injury by accident on July 20, 1992, plaintiff is disabled from work and is entitled to receive compensation for temporary total disability at the rate of $213.34 per week from October 28, 1993 and continuing thereafter until defendant-employer obtains permission from the Industrial Commission to cease said payments. N.C. Gen. Stat. 97-29. Defendant-employer is entitled to a credit for the wages earned by plaintiff on November 22, 1993, January 17, 1994, and February 7, 1994, and for the temporary total disability compensation benefits reinstated as of May 13, 1994 pursuant to the Form 26 Agreement approved by the Commission on September 21, 1994.
2. Plaintiff is entitled to payment of all medical expenses by defendant-employer as a result of his compensable injury on July 20, 1992, for so long as such examinations, evaluations, and treatments may reasonably be required to effect a cure, or give relief, and will tend to lessen plaintiff's period of disability. N.C. Gen. Stat. 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant-employer shall pay plaintiff temporary total disability compensation at the rate of $213.34 per week from October 28, 1993 and continuing thereafter until defendant-employer obtains permission from the Industrial Commission to cease said payments. Since defendant-employer resumed payment of temporary total disability compensation as of May 13, 1994, defendant-employer shall pay in a lump sum the accrued benefits for the period October 28, 1993 through May 12, 1994, less a credit for wages earned on November 22, 1993, January 17, 1994, and February 7, 1994.
2. Defendant-employer shall pay all medical expenses incurred, or to be incurred, by plaintiff as the result of his compensable injury by accident, for so long as such examinations, evaluations, and treatments may reasonably be required to effect a cure, or give relief, and will tend to lessen plaintiff's period of disability, when bills for the same have been submitted through defendant-employer to the Industrial Commission and approved by the Commission.
3. A reasonable attorney's fee of twenty-five percent of this Award is approved for plaintiff's counsel and shall be deducted from the lump sum due plaintiff and paid directly to his counsel.
4. Defendant-employer shall pay the costs.
 S/ ______________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ ______________________________ COY M. VANCE COMMISSIONER
S/ ______________________________ BERNADINE S. BALLANCE COMMISSIONER